## A11A1025. OMNI BUILDERS RISK, INC. v. BENNETT.
### (721 SE2d 563)

BARNES, Presiding Judge.

Omni Builders Risk, Inc., n/k/a Best Value Insurance Services, Inc. ("Omni") appeals from the order of the trial court enforcing a mediated settlement agreement between Omni and Lori Bennett. The trial court granted Bennett's motion for partial summary judgment upon finding that the parties entered into a binding settlement agreement during mediation, and denied Omni's cross-motion for summary judgment in which it had argued that Omni never entered into a binding settlement agreement. Upon our review, we reverse.

The relevant facts show that after Lori Bennett was terminated from Omni, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming that she

---

[30] See *Bloom*, 41 F3d at 913 (I).

was discharged because she had become pregnant shortly after employment. During the pendency of the EEOC claim, per Bennett's employment contract with Omni, on November 2, 2008, the parties attended a mediation at which James Dillard, the president and majority shareholder of Omni, Bennett and their respective attorneys were present.

The four attendees signed a mediation agreement which provided guidelines for the mediation process. During the subsequent mediation, the parties preliminarily agreed to settle the claim for $65,000, after which the mediator prepared a "settlement memorandum" which had signature lines for both parties and their attorneys. The memorandum provided that Bennett would release all claims and withdraw the discrimination charge filed with the EEOC, and accept $65,000 in damages, and Omni would pay the mediation costs. The memorandum included a provision for $2,000 in liquidated damages for breach of the settlement agreement.[1] Bennett and Dillard were in separate caucus rooms during this time, and Dillard's attorney averred that the mediator prepared the memorandum after several hours of negotiation and took the proposal to Bennett and her attorney first for their signatures. After Bennett and her attorney signed the memorandum, the mediator took the memorandum to Dillard and his attorney. The attorney signed the document, but Dillard refused and left the mediation. The mediator returned to Bennett and her attorney and told them about the incident.

On May 20, 2009, Bennett sued Omni for breach of contract, expenses of litigation, and fraudulent inducement. She also filed a motion to enforce the settlement agreement.[2] Omni answered and counterclaimed, alleging that the agreement was the result of a mutual mistake as to the applicability of Title VII and should be rescinded. Omni also asserted a counterclaim for breach of contract. On cross-motions for summary judgment, the trial court granted Bennett's renewed motion to enforce her settlement agreement, which she restyled as a motion for summary judgment, and denied Omni's motion. In its order, the trial court found that Bennett had presented a "straightforward breach of contract claim" because

the Settlement Memorandum, memorializing the terms of

---

[1] Bennett could not recall if the other terms of the agreement were negotiated after the $65,000 figure was reached. In her deposition, she testified that she did not know if Dillard "agreed to the amount and then I decided . . . I want the non-compete clause lifted, and then the EEOC [claim withdrawn], I don't know how that transpired."

[2] On May 26, 2009, the EEOC dismissed Bennett's charge of discrimination upon finding that Omni did not have the required number of employees and thus was not an "employer" for purposes of Title VII.

> the oral agreement, is an enforceable written contract on its face. Based upon the theory of apparent authority, [Omni] is bound by the signature of its attorney.... Georgia law dictates that an agreement is enforceable against the client when an attorney of record has the apparent authority to enter into an agreement on behalf of his client.

The trial court further found pursuant to OCGA § 15-19-5, Rule 4.12 of the Uniform Superior Court Rules ("USCR"), and *Brumbelow v. Northern &c. Co.*, 251 Ga. 674 (308 SE2d 544) (1983), that the attorney was acting as Omni when he signed the settlement memorandum, and "[i]f there was any restriction on [the attorney's] authority, [Bennett] was unaware of it. Even after Dillard stormed out of the mediation, no one ever mentioned that he had refused to sign the document or otherwise did not agree to the terms on the Settlement Memorandum."

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." OCGA § 9-11-56 (c).

1. Omni first contends that the trial court erred in denying its motion for summary judgment because the uncontroverted evidence shows that Omni never entered into a binding settlement agreement. It maintains that the attorney did not possess apparent authority to bind Omni, and that thus there was no enforceable contract without Dillard's signature.

"An attorney has apparent authority to enter into a settlement agreement on behalf of a client; and the client will be bound by such agreement, even in the absence of express authority, where the opposite party is unaware of any limitation on the attorney's authority." *Devereaux v. C & S Nat. Bank*, 172 Ga. App. 53 (322 SE2d 310) (1984); see *Brumbelow v. Northern &c. Co.*, supra. OCGA § 15-19-5 provides in pertinent part that "[a]ttorneys have authority to bind their clients in any action or proceeding by any agreement in relation to the cause, made in writing . . . ." Likewise, under USCR 4.12, "[a]ttorneys of record have apparent authority to enter into agreements on behalf of their clients in civil actions."

> "Apparent authority" is an agency concept which refers to an agent's authority as it is apparent to third parties. Apparent authority is that which the principal's conduct leads a third party reasonably to believe the agent has; it creates an estoppel allowing third parties to bind a principal to the agent's acts on account of the principal's conduct,

reasonably construed by third parties acting in innocent reliance thereon. Where there were no manifestations of authority by the principal to a third party, apparent authority is not in issue.

(Citation omitted.) *Morris v. Williams*, 214 Ga. App. 526, 527 (2) (448 SE2d 267) (1994). The acts of the principal which create apparent authority may include "written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." (Citations and punctuation omitted.) *Intl. Indem. Co. v. Odom*, 174 Ga. App. 6, 7 (2) (329 SE2d 307) (1985).

This authority is determined by the contract between the attorney and the client and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties. The authority may be considered plenary unless it is limited by the client and that limitation is communicated to opposing parties. Therefore, from the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client, and the client will be bound by the acts of his attorney within the scope of his apparent authority.

(Citations omitted.) *Rodebaugh v. Robbins*, 180 Ga. App. 338, 339 (349 SE2d 195) (1986). "Such evidence must show that the principal either intended to cause the third person to believe that the agent was authorized to act for him, or he should have realized that his conduct was likely to create such belief." (Citations and punctuation omitted.) *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 109 (2) (661 SE2d 578) (2008).

In this case, Bennett averred that she was never "informed or became otherwise aware that [Omni] placed any restriction or limitation on its lawyer's representation," and that she believed that Omni's attorney "had full authority to act on [Omni's] behalf." In his affidavit, Omni's attorney recalled that

[s]hortly after the mediation began, the parties moved to separate caucus rooms and remained there until the conclusion of the mediation. After several hours of negotiations, [the mediator] took a Settlement Memorandum to Bennett and her attorney. . . . He then returned with the

> Settlement Memorandum signed by both [Bennett's attorney] and [Bennett]. . . . [The mediator] handed me the Settlement Memorandum and I signed it. I did not sign it intending or expecting that my signature, alone, would bind [Omni] to the terms of the document because the document required [Dillard's] signature as the principal.

He further averred that he would not have signed the document, had Dillard been offered the document first and refused to sign it.

In *Powerhouse Custom Homes v. 84 Lumber Co.*, 307 Ga. App. 605 (705 SE2d 704) (2011), during a mediation session, the parties' counsel signed a mediation agreement, but one party expressly rejected the settlement proposal. We found that the mediation agreement did not amount to an enforceable settlement of the suit, but by its express terms, the mediation agreement merely set forth a "proposal," amounting to a settlement offer that was subject to acceptance or rejection.

Here, Dillard, the principal in the negotiations, was present during the mediation, and the Settlement Agreement expressly provided for his signature as the president of Omni. There was a separate line under the space provided for Dillard to sign for his attorney's signature. Further, the mediation agreement signed by the parties at the start of mediation provided for signatures of all of the attendees as well. There was nothing in these circumstances indicating that Dillard's attorney had apparent authority to act for Dillard.

"Apparent authority" is only indicated when the principal's conduct leads a third party reasonably to believe the agent has authority to act for the principal. Where, as here, there were no manifestations of authority by the principal to a third party, apparent authority is not in issue. See *Morris v. Williams*, 214 Ga. App. at 527 (2).

Based on this evidence, Bennett had no reason to believe that Omni's attorney had apparent authority to enter into the Settlement Agreement, notwithstanding Dillard's refusal to sign. The document expressly reflected that Dillard's signature was required, just as Bennett's signature was required. The evidence did not show that Dillard either intended to make Bennett believe that the attorney was authorized to act for him, or realized that his conduct was likely to create such belief. *Capital Color Printing v. Ahern*, 291 Ga. App. at 109 (2).

Thus, because Omni's attorney did not have apparent authority to bind it to the proposed Settlement Agreement and there was otherwise no enforceable settlement agreement, the trial court erred in denying Omni's motion for summary judgment.

2. For the reasons discussed in Division 1, the trial court also erred in granting Bennett's motion for partial summary judgment, and in enforcing the Settlement Agreement.

*Judgment reversed. Adams and Blackwell, JJ., concur in judgment only.*

DECIDED NOVEMBER 29, 2011 —
RECONSIDERATION DENIED DECEMBER 16, 2011.

*Gary Gerrard, M. Katherine Durant*, for appellant.
*Barrett & Farahany, Amanda A. Farahany, Eleanor M. Attwood*, for appellee.